UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN GUERRERO, | § | |
| | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-3062 |
| | § | |
| FEDEX FREIGHT, INC., | § | |
| | § | |
|    *Defendant*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendant FedEx Freight, Inc.'s ("FedEx") motion for summary judgment. Dkt. 28. Upon consideration of the motion, response, reply, summary judgment record, and applicable law, the court finds that the motion should be GRANTED.

**I. BACKGROUND**

On June 22, 2012, plaintiff filed suit against FedEx alleging various claims of employment discrimination and retaliation under the Texas Labor Code. Dkt. 1, Ex. 4. Specifically, in his Original Petition, plaintiff claimed Fedex discriminated against him based on his national origin, race, disability, and age "by undermining his decisions, limiting his decision making duties and disparate impact." *Id.* at 5. He further asserted claims for retaliation and wrongful termination based on "his refusal to lie and commit fraud, his opposition to discrimination and retaliation by his employer and his own complaints and EEOC charge." *Id.*

Plaintiff was hired by American Freightways, Inc.[1] in November 1999 in San Antonio, Texas. *Id.* at 2. Plaintiff was promoted in June 2009 to Operations Manager and was transferred to the Houston, Texas terminal. *Id.* Fedex contends plaintiff began experiencing difficulty adjusting to

---

[1] Fedex Freight, Inc. subsequently purchased and took over the operations of American Freightways, Inc. Dkt. 31, Ex. A at 17.

the additional supervisory authority associated with the Operations Manager role. Dkt. 28 at 2. The first documented instance of a complaint in plaintiff's personnel file occurred in October 2009 when Herlinda Gonzalez filed a written complaint against plaintiff alleging he was harassing her and treating her unequally. *Id.* at Ex. B at 3. After an internal investigation, plaintiff was given additional training regarding respectful employee communications. *Id.* at 4.

In March, 2010, plaintiff alleges that the Service Center Manager, Jeff Null, conducted a meeting with all management, including Human Resources Advisor, Chris Hamrick, wherein he told the managers to make a list of all employees who had filed complaints with the Equal Employment Opportunity Commission ("EEOC"). Dkt. 31. Ex. A at 55, Ex. B at 32. He instructed managers to "target" these individuals so Fedex could "get rid of" them. *Id.* Plaintiff alleges he verbally told Null that he would not retaliate against the employees who filed claims with the EEOC. *Id.* at Ex. A at 56. On two other occasions, Null also instructed plaintiff to "target" other employees for termination. *Id.* at 96. Plaintiff refused to target these employees. *Id.*

Also in April, 2010, plaintiff claims he was involuntarily transferred to the Hobby Airport location in Houston, Texas. *Id.* at 58. In contrast, Fedex argues that plaintiff voluntarily requested the transfer to the Hobby facility and submitted a job interest form requesting such transfer. Dkt. 28, Ex. B at 5. Specifically, the job interest form indicated that plaintiff requested the transfer because "[d]ue to the lack of experience located in [Hobby] this would be a great opportunity for me to mentor a very young leadership core & grow as a leader. And career advancement." *Id.* Based on the letter offering the transfer to plaintiff, he accepted this position on May 24, 2010, although he alleges he was already involuntarily working at the Hobby facility when his supervisors forced him to fill out the transfer request. *Id.* at 6; Dkt. 31, Ex. A at 66. The transfer was a lateral move

2

in terms of position and salary; however, plaintiff asserts that the Hobby facility was a less desirable location with less opportunity for bonuses. *Id.* at 57.

At this new location, plaintiff alleges the Service Center Manager, Kelley Williams, instructed him to "target" two associates because they had disrespected him at a meeting. Dkt. 1 at 5. Plaintiff refused. *Id.* In July 2010, plaintiff was issued an Improvement Plan by Williams for missing loads, researching shipment issues in an untimely manner, and failing to complete required paperwork. Dkt. 28, Ex. B at 7. Plaintiff claims Williams began retaliating against him by "establishing a false paper trail" based on plaintiff's purported failure to follow directions. Dkt. 1 at 5. In August 2010, plaintiff was written up again for failing to follow proper document control procedures and poor leadership based on his failure to properly manage the dock causing back-ups. Dkt. 28, Ex. B at 8. This Improvement Plan also noted that management had received several complaints from associates regarding difficulties dealing with plaintiff. *Id.*

On August 19, 2010, Fedex received complaints from three different employees regarding plaintiff making sexually-oriented comments. *Id.* at 9. Plaintiff denied the allegations. *Id.* Fedex conducted an investigation, collecting statements from complainants and witnesses. During the investigation, plaintiff sent an email to Williams indicating that he was experiencing personal stress at home, which was affecting his ability to perform his job. *Id.* at 10. Shortly thereafter, plaintiff went out on short-term disability leave. Dkt. 31, Ex. A at 102. Plaintiff was on disability leave for approximately six months. *Id.*

On December 17, 2010, while on short term disability leave, plaintiff filed a claim with the Texas Workforce Commission ("TWC") alleging acts of discrimination and retaliation by Fedex. Dkt. 28, Ex. C. Plaintiff returned to work following disability leave on February 17, 2011. Dkt. 31, Ex. A at 102. Upon his return, Henry Munguia, an associate at the Hobby facility, filed a complaint

3

against plaintiff for threatening his job. Dkt. 28, Ex. A. Another associate also filed a complaint regarding plaintiff's "intimidating" style of leadership. *Id.* On March 30, 2011, Fedex issued plaintiff a Letter of Commitment counseling him on the complaints received regarding the sexually-oriented comments and investigation conducted before his disability leave commenced. *Id.* at Ex. B at 11. Plaintiff refused to sign the letter, and instead wrote that the reprimand was retaliation for his TWC charge. *Id.* In March and April 2011, plaintiff sent various emails to human resources managers, Rob Leach and Chris Hamrick, complaining about the discrimination and retaliation against him by Null and Williams. *Id.* at Ex. A. Leach visited the Hobby facility and met with plaintiff several times regarding his complaints. Dkt. 31, Ex. A at 110. Plaintiff alleges that Leach encouraged him to resign. *Id.*

On April 13, 2011, plaintiff was issued a Critical Letter of Commitment for his lack of improvement and continued conduct issues, including insubordination, dishonesty, and poor management. Dkt. 28, Ex. B at 12. The Letter warned that should "your performance fail to improve, you will be held accountable and will be subject to disciplinary action up to and including possible termination of your employment." *Id.* Fedex continued to receive complaints from certain female employees who stated plaintiff was unprofessional and made the working environment uncomfortable. Dkt. 31, Ex. A. At the conclusion of the investigation, plaintiff's superiors, including Chris Hamrick, Rob Leach, and Kelley Williams, recommended he be terminated. Dkt. 28, Ex. B at 13. Plaintiff was terminated on April 28, 2011. *Id.* Fedex maintains plaintiff was terminated because of his failure to improve his performance and professionalism despite multiple warnings. *Id.* at 1.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to summary judgment, and no defense to the motion is required. *Id.* "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a

genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting former FED. R. CIV. P. 56(e)).

### III. ANALYSIS

As an initial matter, plaintiff has abandoned his claims for age, race, national origin, and disability discrimination. Dkt. 31 at 7. Instead, plaintiff "opts to proceed solely under his claims based on opposition to discrimination and retaliation. . . ." *Id.* Accordingly, the court will only address his retaliation claims.

Plaintiff asserts retaliation under the Texas Commission on Human Rights Act ("TCHRA"). TEX. LAB. CODE § 21.055. The TCHRA prohibits an employer from discriminating or retaliating against an employee for filing a complaint or opposing a discriminatory practice. *Id.* One of the purposes of the TCHRA, according to the Texas legislature, is to provide for "the execution of the policies of Title VII of the [federal] Civil Rights Act of 1964 and its subsequent amendments." *Id.* § 21.001(1); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). As a result, Texas courts use analogous federal statutes and applicable case law to guide their reading of the TCHRA. *Id.*

In order to survive summary judgment in a retaliation case, the plaintiff must make a prima facie showing that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.–Houston [14th Dist.] 2007, pet. denied). If the plaintiff meets this requirement, the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the adverse employment action. *Pineda*, 360 F.3d at 487; *Dias*, 214 S.W.3d at 676. The plaintiff then assumes the burden to present proof that the employer's stated reason is pretextual. *Gonzalez v. Champion*

*Techs., Inc*, 384 S.W.3d 462, 466 (Tex. App.–Houston [14th Dist.] 2012, no pet.). Under this framework, the employee's ultimate burden is to prove that the adverse employment action taken against the employee would not have occurred "but for" the protected conduct. *Pineda*, 360 F.3d at 487; *Ptomey v. Tex. Tech Univ.*, 277 S.W.3d 487, 497 & n.11 (Tex. App.–Amarillo 2009, pet. denied). In other words, "even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).

### A.   Protected Activity

Plaintiff maintains that he engaged in protected activity by opposing retaliation against other employees who had filed EEOC charges.[2] Plaintiff cites specifically to his refusal to "target" employees who made EEOC complaints as requested by his Service Center Manager, Jeff Null. Dkt. 31, Ex. A at 55. Plaintiff claims this refusal to retaliate against EEOC filers is protected activity under the TCHRA's opposition clause. Fedex disagrees that plaintiff's protestations in this regard constitute protected activity. Instead, Fedex argues that the TCHRA prohibits retaliation against employees who "oppose discriminatory practices," not retaliation against those who oppose retaliation. While this is a technical distinction, under the language of the statute, the court finds it to be a valid one.

---

[2] Plaintiff also contends that he was retaliated against on the basis of his refusal to "target" other employees for non-discriminatory reasons. These requests contain no reference to conduct that could be considered discriminatory in nature. *See* Dkt. 1 at 4 (Null asked plaintiff to target two supervisors because they were "dead weight."); *id.* at 5 (Williams instructed plaintiff to target two employees who disrespected him). Rather, the supervisors asked him to "target" employees for performance or conduct-related reasons. Because plaintiff could not have reasonably believed that these requests constituted unlawful employment practices, these incidents do not give rise to protected activity. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007) (failing to find protected activity when employee could not have reasonably believed employer's statement constituted an unlawful employment practice).

The plain language of the TCHRA opposition clause as compared to the language of Title VII elucidates this distinction. Specifically, the opposition clause of the TCHRA provides "[a]n employer commits an unlawful employment practice if the employer retaliates against a person who (1) opposes a *discriminatory practice*. . . ." TEX. LAB. CODE § 21.055 (emphasis added). An employer discriminates, as that term is used in the TCHRA, when, because of race, color, disability, religion, sex, national origin, or age, it 1) "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or 2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee." *Id.* § 21.051.

Title VII, on the other hand, encompasses a broader type of protected activity in its anti-retaliation provision. Specifically, Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed *any practice made an unlawful employment practice by this subchapter*." 42 U.S.C. § 2000e-3(a) (emphasis added). While Title VII prohibits retaliation based on any unlawful practice under the subchapter (inclusive of retaliation), the TCHRA only forbids retaliation against an employee who opposes "discriminatory practices." Discriminatory practices are limited under the TCHRA to certain conduct by employers. Thus, as alleged by plaintiff, his opposition to retaliation does not come within the purview of the anti-retaliation provision of the TCHRA.

Plaintiff also bases his retaliation claim on the filing of his TWC charge on December 17, 2010. Neither party disputes that the filing of the TWC complaint constitutes protected activity. Dkt. 28 at 20. On this ground, plaintiff has established the first prong of his prima facie case.

B.     **Adverse Employment Action**

An adverse employment action in a retaliation context is an action that a reasonable employee finds to be materially adverse, such that it might dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405 (2006). Plaintiff claims his exclusion from manager meetings, involuntary transfer to the Hobby facility, and termination from Fedex were adverse employment actions. The parties do not dispute that termination is an adverse employment action. *See* Dkt. 28 at 22. However, there is a dispute as to whether exclusion from manager meetings and a lateral transfer are materially adverse such that a reasonable employee would be dissuaded from taking advantage of the remedial provisions in the employment discrimination statutes.

The court finds that neither the transfer nor the exclusion from meetings constitute adverse employment actions. First, plaintiff has provided very little information regarding the timing, nature, or extent of any meetings from which he was excluded. The only evidence before the court on this issue is plaintiff's own conclusory testimony that he was excluded from meetings. In light of the dearth of evidence, the court cannot conclude that plaintiff's purported exclusion from these meetings rises to the level of a materially adverse action such that a reasonable employee would be dissuaded from making or supporting a charge of retaliation. *See El Paso Cmty. Coll. v. Lawler*, 349 S.W.3d 81, 88 (Tex. App.–El Paso 2010, pet. denied).

Additionally, transfers can be considered adverse employment action if the new position is shown to be "objectively worse." *Cox v. Waste Mgmt. of Tex., Inc.*, 300 S.W.3d 424, 439 (Tex. App.–Forth Worth 2009, pet. denied); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 613 (5th Cir. 2007). Generally, a transfer will not be considered materially adverse if it "does not involve a demotion in form or substance." *Sabzevari v. Reliable Life Ins. Co.*, 264 Fed. Appx. 392, 396 (5th Cir. 2008).

Fedex has presented evidence that the transfer was requested by plaintiff and did not involve a change in plaintiff's title, salary, or job responsibilities. Dkt. 31, Ex. B at 6; Dkt. 28, Ex. A. at 57. In fact, he received a $100 per month raise. *Id.* Plaintiff has only presented subjective evidence that the transfer from the Houston facility to the Hobby facility put him in a less favorable position. *Id.* While the evidence is disputed as to whether plaintiff voluntarily sought the transfer, plaintiff has failed to provide any supporting evidence that the transfer was a demotion or resulted in an objectively worse position. *See Fort Bend Ind. Sch. Dist. v. Williams*, 2013 WL 4779693, *5 (Tex. App.–Houston [1st Dist.] 2013, no pet. h.) (finding transfer did not constitute adverse employment action when plaintiff did not provide supporting evidence that transfer was "undesirable"). Therefore, the transfer is not a materially adverse employment action, and cannot support plaintiff's retaliation claim.

Additionally, even if the court were to assume *arguendo* that the transfer constituted an adverse employment action, plaintiff failed to file his complaint regarding this discriminatory act in a timely manner. A person claiming to be aggrieved by an unlawful employment practice must file a complaint within 180 days of the alleged discriminatory act. TEX. LAB. CODE § 21.202(a). The time limit for filing a complaint is mandatory and jurisdictional. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996). Plaintiff asserts his transfer to the Hobby facility was a discriminatory act by Fedex. The transfer occurred in April 2010 according to plaintiff, or at the latest on May 24, 2010 according to Fedex documents. Dkt. 31, Ex. A at 57; Dkt. 28, Ex. B at 6. Plaintiff did not file his TWC complaint until December 17, 2010. *Id.* at Ex. C. Under either version of events, plaintiff did not file his complaint with the Texas Workforce Commission within 180 days of the allegedly discriminatory transfer. For this reason, the court may not consider

plaintiff's transfer as an adverse employment action supportive of his retaliation claim. The only adverse employment action supportive of plaintiff's prima facie case, therefore, is his termination.

### C. Causation

The causal link for a prima facie showing by plaintiff is established if evidence shows that "the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001). The prima facie causal standard is much less stringent than the but-for standard required to show pretext and may be satisfied, in certain cases, based on close temporal proximity between the protected activity and the adverse employment action. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508 (2001); *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996); *Johnson v. City of Houston*, 203 S.W.3d 7, 11 (Tex. App.–Houston [14th Dist.] 2006, pet. denied). Although courts have not defined "close," the Fifth Circuit has held that a period of up to four months may be sufficient to show a causal link, *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001), while a five month lapse is not close enough without other evidence of retaliation. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002). "Indeed, the cases indicate that after four months–at most–some additional, nontemporal evidence is necessary to support a causation inference." *See Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757, 778 (S.D. Tex. 2009) (collecting cases).

Here, plaintiff relies on the temporal proximity of the filing of his TWC charge and termination to support his prima facie case, as well as the increased number of reprimands following such charge. Plaintiff's termination occurred just over four months after he filed his TWC complaint. However, he filed his complaint while on short term disability leave. Therefore, plaintiff did not return to work until February 2011. He was terminated two months later. In those two months, he was reprimanded on several occasions. The persons involved in plaintiff's termination

11

and reprimands were also aware of his TWC filing. *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) ("[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."). Given the relaxed causation standard required in order to establish a prima facie case, the court finds plaintiff has presented sufficient evidence to show that a fact issue exists as to whether his protected activity played a part in Fedex's decision to terminate him.

### D. Non-Discriminatory Reason

If plaintiff is able to establish a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Thompson v. Lakes Regional MHMR Ctr.*, 162 S.W.3d 788, 800 (Tex. App.–Dallas 2005, no pet.). "If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742 (1993)). Fedex has proffered its reasons for transferring, reprimanding, and terminating plaintiff. Fedex maintains that following progressive disciplinary action, plaintiff was terminated after he failed to improve his performance and professionalism towards other employees. On several occasions, plaintiff was cited for insubordination, failure to follow policies, and treating associates unprofessionally. Several complaints from plaintiff's subordinates are included in his personnel file, as well as the findings of Fedex's investigations and improvement plans. Further, the job interest form completed by plaintiff indicates that he voluntarily sought the transfer to the Hobby facility. While plaintiff disputes the voluntary nature of this transfer, Fedex has satisfied its burden setting forth legitimate, nondiscriminatory reasons for the adverse employment actions alleged by plaintiff.

### E.     Pretext

Once the employer establishes a legitimate, nondiscriminatory reason for the adverse action, the burden shifts to the employee to show the reason provided by the employer was a pretext for discrimination. *McCoy v. Tex. Instruments, Inc.,* 183 S.W.3d 548, 556 (Tex. App.–Dallas 2006, no pet.). At the pretext stage, plaintiff must raise a fact issue about whether the adverse employment action would have occurred but for his protected conduct. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 481 (Tex. 2001) (To show pretext, the employee must show the employer was "actually motivated by discrimination."). Plaintiff can make this showing "by producing circumstantial evidence sufficient to create a fact issue as to whether the employer's nondiscriminatory reasons are merely pretext for discrimination." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005). When an employee does not provide objective evidence refuting the legitimate, nondiscriminatory reasons articulated by the employer, pretext cannot be established by subjective beliefs that discrimination motivated employer's actions. *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995). An employee's subjective beliefs of retaliation do not raise a fact issue precluding summary judgment in a retaliatory discharge claim. *Tex. Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995).

Plaintiff's retaliation claim fails on this ground because he solely relies on his subjective beliefs to counter Fedex's reasons for his termination. Plaintiff claims he had only been written up once before complaining about retaliation against others, and thereafter reprimands against him increased. However, an employee's previous good performance is insufficient to show pretext in light of more recent performance problems. *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 552 (S.D. Tex. 2009) (citations omitted). He also maintains that the write-ups following the filing of his TWC

charge were based on false allegations. Plaintiff has presented no evidence other than his own subjective testimony to support such a contention. Several employees and non-decisionmakers filed complaints about plaintiff's unprofessional management. Fedex has fully documented the bases for plaintiff's termination. Based on this record, plaintiff has not demonstrated that a fact issue exists with regard to Fedex's articulated reasons and has failed to show that retaliation was the motivating factor for his termination.

## IV. CONCLUSION

For the reasons stated herein, plaintiff has not sustained his burden and Fedex has shown as a matter of law that its decision to terminate plaintiff was not based on any protected activity taken by plaintiff under the TCHRA. Therefore, Fedex's motion for summary judgment (Dkt. 28) is GRANTED. Plaintiff's claims against Fedex are DISMISSED WITH PREJUDICE. The court will enter a separate final judgment consistent with this opinion.

It is so ORDERED.

Signed at Houston, Texas on October 8, 2013.

_____
Gray H. Miller
United States District Judge